HENRY C. PITNEY, JOHN R. EMERY, FREDERIC W. STEVENS, MARTIN P. GREY, EUGENE STEVENSON, JAMES J. BERGEN AND LINDLEY M. GARRISON, VICE-CHANCELLORS.

MARY ELLEN McGUINNESS

v.

THOMAS McGUINNESS.

[Submitted June 15th, 1905. Decided February 13th, 1906.]

A wife filed a bill against her husband, praying a divorce from bed and board, for his extreme cruelty, and also praying the custody of children of the marriage, and alimony, &c. The subpœna issued thereon was re-

turned without service, and an order of publication was made, notice of which was served on defendant in an adjoining state. Defendant not having appeared or made defence, the cause was referred to a special master, who reported that the complainant had established by proofs the allegations of her bill. Thereupon a decree was made for the divorce sought, awarding the custody of the children and fixing the amount of alimony. Property of defendant in this state was afterward sequestered to enforce the decree. Defendant thereafter filed a petition in the cause, praying that the whole decree should be vacated and set aside, and that the complainant's bill should be dismissed, on the ground that he had not been served with process within this state.—*Held*, that he is not entitled to any relief upon his petition.

On order to show cause.

*Mr. Clarence Kelsey,* for the complainant.

*Mr. Howard Carrow,* for the defendant.

MAGIE, CHANCELLOR.

On July 7th, 1899, Mary Ellen McGuinness filed her bill in this court against her husband, Thomas McGuinness, praying for a divorce *a mensa et thoro* on the ground of extreme cruelty, for the custody of three of the four children of the marriage, and for the support of herself and the children whose custody she sought.

A subpœna was issued upon the bill, returnable August 1st, 1899, and was returned served by the sheriff of Hudson county.

On the 7th of August, 1899, an order, returnable on August 14th, 1899, was made to show cause why an order should not be made for alimony *pendente lite* and counsel fees. On the hearing of that order a solicitor of this court appeared specially for the defendant for the purpose of objecting to the sufficiency of the service of the notice of that application. Upon the proofs it was found that the service was good and sufficient for the purpose of the application for alimony and counsel fees, and an order was made directing payment. That order was made on September 11th, 1899.

On January 15th, 1900, an order was made, upon the motion of a solicitor and counsellor of this court appearing for the defendant specially for that purpose, and upon the consent of the

solicitor and counsel for the complainant, that the subpœna and return of the sheriff, and the order for temporary alimony and counsel fees, and all proceedings based thereon, should be set aside.

Thereupon a new subpœna was issued, tested January 15th, 1900, which was returned by the sheriff of Hudson county, with an affidavit of non-residence, and on February 7th, 1900, the usual order of publication was made.

Notice of this order was shown to have been personally given to the defendant on February 7th, 1900, in the manner required by the statute and the rules of court.

The defendant having interposed no defence, the matter was referred to a special master. He reported on January 20th, 1901, that the complainant had established her right to the relief she sought. On another and supplemental order the same master made an additional report on March 19th, 1901, upon the faculties of the defendant. Thereupon, on May 18th, 1901, a final decree was made decreeing a divorce from bed and board, giving the custody of the children to the complainant, and fixing the sum which should be paid for the future support of complainant and the three children. A certified copy of the final decree and of the taxed bill of costs was served on the defendant, personally, on July 9th, 1901, and a demand was made upon him for the payment of the costs and the amounts ordered to be paid by the decree, and he refused to comply therewith. Thereupon, on September 27th, 1901, an order of sequestration was made, and John S. McMaster, one of the masters of this court, was appointed sequestrator.

It appears from the records and files of this court that he has taken charge of some of the defendant's real estate, and has received the rents thereof under the authority of his appointment.

On February 24th, 1902, the defendant filed a petition in the cause. It was signed by him and a firm of solicitors of this court. The petition set forth the proceedings, the final decree and order of sequestration, and averred that the defendant was not, when the bill was filed, a resident of the State of New Jersey, and had not been served with process within this state, and, for that reason, charged that not only the order for seques-

tration, but also the final decree, should be vacated and set aside. Its prayers were that the enrollment in the cause be opened; that the final decree and all orders in the cause be opened and set aside; that the subpœna and service and the writ of sequestration be set aside; that the complainant's bill be dismissed, and that the petitioner should have further relief. The petition was accompanied by affidavits.

Upon this petition an order to show cause why· its prayers should not be granted was advised by a vice-chancellor, upon the motion of defendant's solicitor and counsel. The order was returnable on March 3d, 1902, and service of the order was directed to be made. For some unexplained reason this order was not brought to hearing, and no service, as required, appears.

The matter remained in this condition until April 3d, 1905, when the present solicitor of defendant applied for and obtained an order substituting him for the firm of solicitors previously appearing for defendant, and thereupon, on his motion, another order to show cause why the prayers of the petition of February 24th, 1902, should not be granted was advised by another vice-chancellor. That order was returnable on May 1st, 1905. The hearing was adjourned to May 9th, 1905, and it was then agreed by counsel that it should be heard by briefs, which were furnished about July 1st, 1905. On the part of the defendant no affidavits, other than those appended to the petition, have been presented. On the part of the complainant no affidavits have been presented.

From these recitals it is obvious that the prayers of defendant's petition are altogether too broad. In respect to some of them, there is not disclosed any ground on which they can be granted. By the files and records in the cause, as well as by the admissions of defendant's petition, it appears that the defendant was notified of the pendency of his wife's suit for divorce on the ground of ·extreme cruelty in the manner which, under our statute and rules, gave jurisdiction to this court to decree a divorce from bed and board for that cause. He was afforded an opportunity to contest her claim if he desired to do so. He failed to present any defence. Thereupon adjudication was

made that the cause alleged was proved, and the divorce asked was decreed.

There can be no question of the power of this court to make such a decree. *Felt* v. *Felt, 59 N. J. Eq. (14 Dick.) 606.* The jurisdiction has been exercised in innumerable cases, from the time of the earliest divorce laws, and no serious question has ever been raised thereon. The power to make such decrees, upon such notice to a defendant, has been declared by our court of errors and appeals to be conferred upon this court, and it has been recognized as the public policy of the state on the subject of divorce. A *résumé* of the legislation on the subject is contained in the opinion of Vice-Chancellor Pitney in *Wallace* v. *Wallace, 62 N. J. Eq. (17 Dick.) 509.* When that case came before the court of errors and appeals it was there declared that, upon our statute, and service of notice of the suit out of the State of New Jersey, a decree of divorce could be made having extraterritorial force. *Wallace* v. *Wallace, 65 N. J. Eq. (20 Dick.) 361.*

Nor do I think there is any possible doubt as to the jurisdiction exercised in this case in making a decree respecting the children of the marriage. When courts are empowered to separate husband and wife, and to break up the family, in my judgment it necessarily follows that power is given to make provision for the custody of the offspring of the marriage thus interfered with.

By section 19 of the Divorce act of 1874 (*2 Gen. Stat. p. 1269*) the legislature empowered this court when it decreed a divorce to take order adjudicating upon the care and maintenance of the children, and still broader powers are now conferred by section 19 of the present Divorce act. *P. L. 1902 p. 507.* Jurisdiction to decree a divorce *a mensa et thoro* was invoked by complainant's bill, and, in my judgment, a decree respecting the custody of children of the marriage may be supported upon the jurisdiction to decree the divorce and as an incident thereto.

Since the decision of *Pennoyer* v. *Neff, 95 U. S. 714,* it has been frequently held that a decree awarding alimony cannot be effectually made against a defendant not served with process within the jurisdiction of the court making the decree. It has been declared in this court that while a decree for alimony, which was purely a decree *in personam,* would be subject to the

doctrine of *Pennoyer* v. *Neff,* yet it might be otherwise as to such a decree if based on the control of the matrimonial status by a court having jurisdiction over that status. *Hervey* v. *Hervey, 56 N. J. Eq. (11 Dick.) 166.* That was a case in which a wife sought a decree against a husband for support and maintenance under the twentieth section of the Divorce act, and an interlocutory order had been made for temporary alimony. The defendant, not having been served with process, entered a special appearance to move, and did move, to set aside that order. That motion was denied. Upon an appeal from such denial the order therefor was reversed upon the ground that, as the defendant had not been brought in by process served, nor proceeded against by publication and notice as a non-resident, no jurisdiction had been conferred by the twentieth section to make an order for alimony *pendente lite* on the ground that the defendant owned property in New Jersey. *Hervey* v. *Hervey, 56 N. J. Eq. (11 Dick.) 424.* In a subsequent case a decree for divorce and alimony had been made upon service of a notice of an order or publication upon the defendant in the state of his residence, and the defendant, having come into this state, had been seized and held to bail on a *ne exeat.* The defendant, having moved to discharge the writ and vacate the order for bail, the motion prevailed on the ground that the decree in such a case was purely *in personam,* and fell within the doctrine of *Pennoyer* v. *Neff. Elmendorf* v. *Elmendorf, 58 N. J. Eq. (13 Dick.) 113.*

It will be observed that the case last referred to is one in which the relief primarily sought was the complete abolition of the marriage relation between the parties. Alimony was sought as an incident of that kind of relief. Among the numerous cases in which the subject I am now considering has been discussed, and in which the doctrine of *Pennoyer* v. *Neff* has been applied to judgments or decrees for alimony, I have failed to find any in which the primary relief did not involve the complete severance of the marriage relation.

The case before me is of a different character, and the relief sought by this bill is of a less stringent nature. It seeks a divorce from bed and board for extreme cruelty. Under the Divorce act then in force this court was empowered, for such a

marital offence, to decree a divorce from bed and board either forever thereafter or for a limited period, as should seem just and reasonable. Upon such decrees jurisdiction is conferred on the chancellor to make orders for the maintenance of the wife and children, and to enforce such orders upon the husband's property which can be reached by sequestration.

Decrees of divorce from bed and board do not involve any severance of the marital relation. The parties remain husband and wife. The wife retains her right of dower in the lands of the husband. The husband will not thereby be deprived of curtesy in his wife's lands. Alimony upon such a separation is merely the enforcement of the duty which the husband owes to support her who is still his wife and his family. Mr. Nelson declares that an allowance on a decree of separation is equivalent to the award of alimony by the ecclesiastical courts of England upon a decree of divorce *a mensa et thoro.* *2 Nels. Div.* § *902.* The distinction between alimony in the two cases seems recognized in the opinion of Mr. Justice Pitney, in *Lynde* v. *Lynde.* *64 N. J. Eq. (19 Dick.)* *736,* *750.*

In the case of *Bunnell* v. *Bunnell, 25 Fed. Rep. 214,* which is recognized as a leading case on the subject of the application of the doctrine of *Pennoyer* v. *Neff* to decrees for alimony, Mr. Justice Brown suggested that if the state permitted the wife to proceed in her claim for alimony as upon an inchoate lien, the proceeding might be considered as one *in rem,* and a decree upon a service by publication might be sustained.

If it were necessary to the decision of the present motion, I should hold that—considering the peculiar character of this proceeding, which leaves the marital relation unbroken and recognizes the right to enforce the husband's duty of support of his wife and family, and the provisions of our statute for enforcing a decree which fixes the amount of such support upon the husband's property in this state—this decree for alimony, although perhaps not enforceable in another state, is enforceable here.

There is another ground, however, upon which the relief sought by defendant's petition must be denied.

It is well-settled doctrine that if a defendant who claims that the court in which the suit is pending has not acquired jurisdic-

tion over him attacks the jurisdiction, even under a special appearance, he will be held to have submitted himself to the jurisdiction, if under such appearance he seeks some relief upon the merits. The doctrine is recognized by the text-books and illustrated by many cases, the leading case being that of *Livingston's Executrix* v. *Story, 11 Pet. 351.* It was adopted and applied by our court of errors and appeals to a case where the defendant answered in full on the merits, although he had attempted to reserve an objection to the jurisdiction, which he presented by a plea to the jurisdiction, which had been overruled. *Polhemus* v. *Holland Trust Co., 61 N. J. Eq.* (*16 Dick.*) *654.*

The reason of this doctrine is equally applicable to proceedings to challenge the validity of a judgment on the ground that jurisdiction of the defendant had not been acquired. If, under such proceedings, he asks other relief against the judgment on the merits, he will be held to have submitted himself to the jurisdiction. In *Crane* v. *Penny, 2 Fed. Rep. 187,* Judge Choate, in dealing with an application of a defendant to vacate a judgment taken by default, which included other relief and a stay pending the application, held that the defendant had thereby submitted himself to the jurisdiction, so that all defects therein were cured. In *Burdette* v. *Corgan, 26 Kan. 102,* Judge Brewer held that when a party against whom a judgment has been entered files a motion to vacate it as void, and the motion is based on non-jurisdictional as well as jurisdictional grounds, he thereby enters a general appearance. The doctrine is illustrated by many other cases. *Grantier* v. *Rosecrance, 27 Wis. 488; Anderson* v. *Coburn, 27 Wis. 558; Alderson* v. *While* (*per Chief-Justice Dixon*), *32 Wis. 308; Blackburn* v. *Sweet, 38 Wis. 578; Dikeman* v. *Struck, 76 Wis. 332; Henry* v. *Henry, 87 N. W. Rep. 522; Curtis* v. *Jackson, 23 Minn. 268; York* v. *York, 55 N. W. Rep. 1095; Pry* v. *Han. & St. Jos., 73 Mo. 123.*

Defendant's application, which is to vacate not merely the decree for alimony and its incidents, but the whole decree, although it appears that, under the order of publication and service of notice thereof, the court acquired jurisdiction to decree divorce and custody of children, must be denied.

I come to this conclusion more readily because the case shows

that while the matrimonial domicile was in this state, defendant was guilty of such extreme cruelty as justified his wife seeking the relief afforded by our statute; that although defendant left the state in time to avoid service of process, yet he went only to an adjoining state, and was served there with notice of the pendency of her suit; that although he thus knew of complainant's claim, he made no defence, and, after decree and sequestration, waited nearly a year before he filed this petition and procured a rule to show cause, which for three years he failed to bring to hearing, although his property in this state, ample to afford a support for the wife he had ill-treated and the children she has to support, was under sequestration, and has, only after this lapse of time and the changed circumstances, come forward to interpose this technical defence.

As I think defendant is not entitled to any relief, his rule to show cause will be discharged and his petition will be dismissed.